# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LINDA MICHELE DAMRON,

    Plaintiff,

v.                                                     Case No. 20-cv-_____

                                                     Hon.

AMAZON.COM SERVICES, INC.,

    Defendant.

---

Sarah S. Prescott (P70510)
Salvatore Prescott Porter & Porter, PLLC
Attorney for Plaintiff
105 E. Main Street
Northville, MI 48167
(248) 679-8711
prescott@spplaw.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff Linda Michele Damron, by and through her attorneys, SALVATORE PRESCOTT PORTER & PORTER, submits this Complaint and states as follows:

## OVERVIEW

In *each quarter* of 2019, Amazon notched approximately $2,000,000,000.00 in profits. Meanwhile, Plaintiff Damron worked in the company's fulfillment center in Romulus, quietly and effectively doing her job day in and day out. In August

1

2019, Damron's son attempted to commit suicide: in fact, Plaintiff was personally drawn into a standoff with police in which her child was brandishing a weapon with which to kill himself.  Understandably distraught to the point of physical breakdown, Damron expressed to Amazon that she needed to use her federally guaranteed Family Medical Leave for some medical attention—and why.  Knowing that Damron and her child were going through extreme psychological turmoil, Amazon responded with a flurry of red tape, incorrect directions contrary to law, and confusing and conflicting instructions to Damron about securing her leave.  She attempted to comply and faithfully returned applications for leave as requested (more than once).  *Amazon's own records* show it granted her the leave she was seeking, leave to which she was indisputably entitled, yet it also erroneously processed a termination of her, for supposedly failing to apply correctly.  Its refusal to redress this error brings the parties to this Court.

## **PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a resident of Wayne, Michigan.
2. Defendant Amazon.com Services, Inc. is foreign corporation incorporated in Delaware with its principal place of business in Washington. Defendant is registered with the Michigan Secretary of State and is doing business in this District.  The Court therefore has personal jurisdiction.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this case arises under the Family Medical Leave Act.

4. Venue is appropriate under 28 U.S.C. § 1391 since a substantial part of the events giving rise to this action occurred in this District.

## GENERAL ALLEGATIONS

5. Linda ("Michele") Damron is a 49-year-old resident of Wayne, Michigan.

6. Amazon is an international internet retailer that employs hundreds of thousands of employees.

7. Amazon hired Damron on August 4, 2018 at Amazon's Fulfillment Center in Romulus, Michigan as a Warehouse Associate.

8. Damron's work was effective and satisfactory at all times.

9. Amazon did not separate/terminate Damron because of any issue with the performance of her duties.

10. On August 25, 2019, Damron's son attempted to kill himself.

11. Damron was put in the horrendous position of having to intervene and come in between her son—who was armed and in great emotional distress––and police officers who had arrived to help him.

12. Damron's son was hospitalized thereafter.

13. The next day, Damron explained to agents of Amazon what had happened and requested a leave of absence.

14. Damron did not know how much time she would need off and asked to be excused from work effective immediately without a return to work date specified.

15. Amazon advised that someone would email her paperwork for leave under the Family Medical Leave Act ("FMLA").

16. On August 27, 2019, Damron received a letter from Amazon reflecting her request as a request for "intermittent" leave, and stating that she was eligible for such leave.

17. She was in fact eligible for leave under the FMLA. Specifically, she had been employed for more than enough time to qualify, and she was a regular full-time employee with adequate hours worked to qualify (and she had not depleted her leave) as of August 2019.

18. Amazon requested that Damron complete a form known as the "Health Care Provider Certification Form."

19. On August 29, 2019, Plaintiff went to her doctor, who is also her son's doctor, and the doctor filled out the Certification Form.

20. The form was completed to allow intermittent FMLA leave because Damron still did not know how long her son would be hospitalized or how long she would need her own medical care.

21. That same day, within three days of her son's horrific experience, Damron provided Amazon the completed form, meaning she had requested leave both verbally and in writing.

22. Amazon's FMLA administrators contacted Damron by phone upon receipt and conveyed that she needed to specify which dates she would be on leave.

23. When Damron explained that it was impossible for her to do so given the situation, and she was told that in that case she should have requested continuous leave.

24. When she asked whether she could be treated as requesting continuous leave, she was told she could not, and that if she tried her request for leave would be denied.

25. Plaintiff was also told that she needed to resubmit her forms because they were too blurry to be read.

26. Accordingly, on September 6, 2019, Damron again attended a doctor's appointment, and a doctor again filled out the FMLA forms, following

Amazon's directive for an intermittent leave between August 26, 2019 and September 8, 2019.

27. The forms were faxed to Amazon that same day.

28. On September 9, 2019, Amazon retroactively approved this leave period, issuing her a letter stating in part:

The below chart provides a summary status of all covered plans associated with your absence.

| Plan Name | Decision Status | Decision Date | From | Through |
|---|---|---|---|---|
| Family and Medical Leave Act | Approved | 09/09/2019 | 08/27/2019 | 09/08/2019 |

29. Notably, Plaintiff received a *telephone call* reflecting approval of the leave, as well as a *mailed letter from U.S. mail.* As will be seen below, Amazon changed its method of communication with Damron, demanding time-sensitive responses based only upon email "notices" Damron never even saw, as events transpired.

30. After its clear approval of Damron's leave communicated on September 9, Amazon's personnel records for Damron reflect contradictory, confusing and internally inconsistent determinations and/or instructions, including—

   a. On September 11, Amazon sent a *new* notice stating that Damron had exceeded her approved leave, and therefore needed to provide updated documentation from her health care provider.

    b. On the same day, Amazon called Plaintiff directly to say the same thing.

    c. Yet Amazon's payroll records show a different story, that Damron *was approved* for further intermittent leave from September 18 to 25, 2019.

    d. On October 2, 2019, someone who was unidentified left a voicemail for Damron stating that she had failed to supply information needed, so her absences were unexcused.

    e. Damron returned to her doctor for additional paperwork.

31. Meanwhile, further verbal communications between the parties ensued about Damron's case in October, and Amazon's internal records reflect that Damron was approved for the leave of absence, this time categorized as *continuous* from October 13 to 17, 2019.

32. Then, in the midst of this approved leave, on October 15, 2019, Amazon sent Damron an email from its HR Department stating (again) something different. Now it stated that the balance of her unpaid time off was negative, which was a violation of Defendant's attendance policy and could result in termination. That is, Amazon was reflecting that she was not on leave had had exhausted her vacation.

7

33. The October 15 email stated that if Damron felt this was a mistake, she had to respond the very next day (by October 16, a date Amazon's own records reflected was a date of approved continuous leave) **or** she would be terminated.

34. Notably, Amazon chose to express this contradictory and critical command (with a 24-hour deadline), *without either mailing or calling Damron as it had done before.*

35. Damron did not receive the email until hours after the deadline.

36. In any event (despite facing a series of confusing and contradictory determinations described above), Amazon's own records reflect unambiguously that Damron *had* successfully and timely communicated she needed continuous leave, picking up after her already-approved intermittent leave described above, e.g., after September 9. Namely, Amazon's own paperwork categorized Damron as "LOA – continuous" starting October 13.

37. To further clarify for Amazon the situation, Damron supplied the case number for her request for continuous leave and she advised Amazon's HR of the need for a continuous leave in response to its October 15 message not later than October 17, 2019 at 8:14 a.m.

38. At no time did Amazon tell Damon that this communication was insufficient untimely, or that she was fired.

39. On the contrary, October 17, 2019 Amazon confirmed to Damron in writing it *had* received her FMLA requests (as well as a request for short term disability benefits), *and that she could have until November 7 to provide documents to support the need.*

40. Nevertheless, and in complete contradiction of itself, Amazon also processed and sent Damron a termination letter to her dated October 17, 2019, citing her absences from work as the cause of her separation.

41. The hours of absence cited as the basis for the termination are dates/times that Amazon's own records show as approved for leave.

42. In summary, although Damron had been in contact repeatedly and had submitted requests for leave and had several calls about needing leave including on a continuous basis following her son's trauma, and although Amazon's own payroll records show that October 13 to 17 was an approved period of continuous leave for Damron, and although Amazon had demanded contradictory steps along the way, and although Damron re-re-re-flagged her need for continuous leave not later than October 17, and although Amazon approved and offered Damron until November 7 to

further this request—it changed its mind and fired her as of October 17, instead citing as absences her approved days of leave.

43. On October 23, 2019, Damron received an email from Defendant's HR department about the appeals process for her termination, which provided her seven days to submit a completed packet of information to appeal her termination.

44. Then the very next day Amazon reversed itself again and told Damron in a letter dated October 24, 2019 that *it had after all approved* her continuous leave for her own medical condition, backdated, covering September 9 to October 21. Its letter stated, in part--

Claim Status Summary

The below chart provides a summary status of all covered plans associated with your absence.

| Plan Name | Decision Status | Decision Date | From | Through |
|---|---|---|---|---|
| Amazon STD Medical | Approved | 10/24/2019 | 09/09/2019 | 10/21/2019 |
| Family and Medical Leave Act | Approved | 10/24/2019 | 09/09/2019 | 10/21/2019 |

45. That is, Amazon *approved* Damron's intermittent leave to care for her son in the hospital from August 26, 2019 and September 8, 2019, as reflected above, and it *approved* her continuous leave covering September 9 to October 21.

46. On October 29, 2019, Damron responded to Amazon's email regarding the appeals process and asked whether she still needed to appeal her termination since all of her absences were approved under FMLA. That same day, she timely emailed the appeals forms.

47. Damron spoke with her local human resources representative, who indicated that the termination was in error and that Damron should be reinstated.

48. On November 6, 2019, Damron emailed about the appeals paperwork because she had not heard anything. Damron also emailed again the next day.

49. On November 22, 2019, Damron's doctor filled out *still more* paperwork supporting Damron's leave and faxed it to Amazon that same day.

50. On December 5, 2019, Amazon sent *another* letter confirming that Damron's leave of absence was approved from September 9 to October 17. This letter stated, in pertinent part:

## Claim Status Summary

The below chart provides a detailed review of your claim status, which lists all leave types for which you have been approved. Please review the decisions and dates carefully.

| Plan Name | Decision Status | Decision Date | From | Through |
|---|---|---|---|---|
| Amazon STD Medical | Approved | 12/04/2019 | 09/09/2019 | 10/21/2019 |
| Family and Medical Leave Act | Approved | 12/05/2019 | 09/09/2019 | 10/17/2019 |

51. Then, the very next day, Amazon sent yet *another* letter stating that it had reversed its leave of absence decision and that Damron's appeal and use of leave was denied, and her termination was final because she had not successfully met Amazon's demands for proper paperwork.

## COUNT I
## FAMILY MEDICAL LEAVE ACT (29 U.S.C. § 2615)– Interference

52. Plaintiff incorporates here all previously stated allegations.

53. Plaintiff was an employee eligible for FMLA leave because she worked for Defendant for more than 12 months prior to Plaintiff's FMLA requests and worked more than 1,250 hours during the relevant 12-month period.

54. Defendant is a covered employer under the FMLA as it employed 50 or more employees within a 75-mile radius in 2019 as well as presently.

55. In 2019, Plaintiff's son suffered from a serious health condition.

56. Plaintiff's son suffered incapacity, chronic or long-term conditions, and conditions requiring multiple treatments.

57. Defendant knew about Plaintiff's son's health problems and also about Plaintiff's need to care for him because she informed Defendant about the situation, requested leave, and provided documentation.

58. Plaintiff requested intermittent leave.

59. When she asked whether she could request continuous leave to address her own health, and after it became clear that was a more appropriate designation given the circumstances, she was falsely informed that she could *not* do so—that such a switch between types of leave would cause her to be fired.

60. Defendants wrongfully denied and interfered with Plaintiff's continued receipt of FMLA benefits by wrongfully denying her leave, and wrongfully instructing her she could not request continuous leave.

61. Plaintiff eventually persisted nevertheless, and was—indeed—fired. However, as set forth above, Plaintiff did timely communicate her own need for continuous leave.

62. Defendants wrongfully denied and interfered with Plaintiff's rights by terminating her for being absent while she was eligible for and on approved leave.

63. Defendant disregarded the FMLA's mandates and wrongfully denied Plaintiff FMLA benefits.

64. Defendant's wrongful denials of FMLA are willful FMLA violations committed in bad faith.

65. Amazon is a sophisticated company well aware of its duties under the FMLA.  Moreover, it had an appeal process in place here to correct itself, had it wished to do so.  It failed and refused to act knowingly and despite its own multiple records showing Plaintiff was approved for leave on the dates she was terminated for "absences."

66. As a result, Plaintiff is entitled to damages, liquidated damages, attorney's fees, costs and all other just and proper relief.

## COUNT II
## FAMILY MEDICAL LEAVE ACT (29 U.S.C. § 2615)– Retaliation

67. Plaintiff incorporates here all previously stated allegations.

68. Plaintiff sought and took FMLA leave and sought continued FMLA leave when the situation necessitated it.

69. Plaintiff was terminated because she exercised her rights under the FMLA in seeking and taking leave and for seeking additional leave under the FMLA to care for her son.

70. Defendant's penalization of Plaintiff for using and seeking FMLA-related time is a willful FMLA violation committed in bad faith.

71. As a result, Plaintiff is entitled to damages, liquidated damages, attorney's fees, costs and all other just and proper relief.

## COUNT III
## EQUITABLE ESTOPPEL

72. This Circuit recognizes that equitable estoppel applies to employer statements regarding an employee's FMLA eligibility.

73. Here, Amazon created a system by which to determine the need for FMLA leave and to appeal.

74. It knew that Damron's child had just attempted suicide and that she was in no mental condition to carry on at work.

75. Amazon issued Plaintiff Damron an unqualified deadline to comply with its demands for paperwork to substantiate her need to use FMLA on October 17 and did not convey that her requests for leave were, as of that date, too late or that she would be fired.

76. Damron reasonably relied on Amazon's offers concerning the timelines she had to comply; after all, Amazon is a billion-dollar company with an entire unit devoted to FMLA compliance.  It has the capacity to communicate expectations clearly.

77. Rather than permit Damron to substantiate her *numerous*, *actually received* requests for FMLA leave per its own deadline, i.e., by November 7, 2019, Amazon terminated Damron, causing her detriment.

78. It then denied her meaningful appeal by ignoring its own determination that she was entitled to leave, despite creating the appeal process.

79. This result is unjust and must be compensated.

## **RELIEF REQUESTED**

Plaintiff Linda Michele Damron seeks all legal and equitable relief available to her, including:

a. Economic damages;

b. Noneconomic damages;

c. Liquidated and punitive damages;

d. Attorney fees and costs; and

e. All other relief deemed just and proper.

          Respectfully Submitted,
          SALVATORE PRESCOTT PORTER & PORTER, PLLC
          /s/Sarah S. Prescott (P70510)
          Salvatore Prescott Porter & Porter, PLLC
          Attorneys for Plaintiff
          105 E. Main Street
          Northville, MI 48167
          (248) 679-8711
          prescott@spplawyers.com

Date August 12, 2020

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

          Respectfully Submitted,
          SALVATORE PRESCOTT PORTER & PORTER, PLLC
          /s/Sarah S. Prescott (P70510)
          Salvatore Prescott Porter & Porter, PLLC
          Attorneys for Plaintiff
          105 E. Main Street
          Northville, MI 48167
          (248) 679-8711
          prescott@spplawyers.com

Date August 12, 2020